On August 13th, 1943, at about 5:15 o'clock in the late afternoon there was an automobile accident at the corner of Thalia and LaSalle Streets in New Orleans. (LaSalle was formerly known as Howard Street). A large truck owned by T. S.C. Motor Freight Lines, Inc., a non-resident corporation, was on its way out Thalia Street and a taxicab, bearing on its sides the name "V-8 Cab Company, Inc." was being operated up La Salle Street. The taxicab entered the intersection an instant before the entry of the truck, but before it could complete the crossing it was struck on the left side near the rear by the truck and, being thrown out of control of its driver, it proceeded a distance of about 30 feet and crashed into a third automobile, a Buick sedan of Sam Brocato which was standing at the curb of LaSalle Street about 30 feet from the intersection.
Brocato instituted this suit in the First City Court of New Orleans seeking recovery of $250.35, which he alleges he was required to expend in repairing the damage sustained by his Buick. Ascertaining that the T. S.C. Motor Freight Lines, Inc. had secured a policy of liability insurance from Insurors Indemnity Insurance Company, and believing that V-8 Cab Company, Inc. was the owner of the taxicab which was involved and that the taxicab was being operated at the time in the interest of the said company, Brocato made those three corporations parties defendant and prayed for solidary judgment against them. T. S.C. Motor Freight Lines, Inc. and Insurors Indemnity Insurance Company filed answer in due course, but the V-8 Cab Company made no appearance, and therefore plaintiff obtained a judgment by default against that company. Inasmuch as the other two defendants had filed answers, the trial of the case as against them awaited a formal fixing on the docket of the court.
Plaintiff in an attempt to make collection under this judgment proceeded in accordance with Act 198 of 1924, and by rule called the judgment debtor, V-8 Cab Company, Inc. for examination concerning its assets.
Though it does not appear in the record, we are told by counsel for Shepherd Cab Owners' Association which has now been made a party defendant that Charles Lewis appeared on behalf of V-8 Cab Company, Inc. and showed to the court that as a matter of fact that company did not own the taxicab which was involved in the accident and did not own any cabs at all but merely owned the trade name, "V-8 Cabs" and had leased out to those who did own taxicabs the right to operate them under that trade name and to put on their cabs the name V-8 Cab Company, Inc. It appears too that Lewis stated that in addition to controlling the said corporation, V-8 Cab Company, Inc., he, personally, owned certain taxicabs and operated them under that name. It is apparent too that although he may not actually have so testified, he gave the impression that the taxicab which was involved in the accident belonged to him.
Plaintiff then abandoned hope of making collection under the judgment which he *Page 482 
had obtained against V-8 Cab Company, Inc., and filed a supplemental petition in this same suit and in it alleged that he had been in error in averring that the taxicab which had been involved in the accident belonged to the said corporation and that, in fact, it belonged to Charles Lewis. He alleged too that, in accordance with the various ordinances of the City of New Orleans concerning the operation of taxicabs and the furnishing of liability policies, bonds or deposits to insure payment of such judgments as may be rendered as a result of the improper operation of such taxicabs, the Shepherd Cab Owners' Association had issued a guaranty bond or security, or had deposited with the City of New Orleans cash covering the operation of the said taxicab and that, therefore, plaintiff was entitled to judgment in his favor against the original defendants, T. S.C. Motor Freight Lines, Inc., Insurors Indemnity and Insurance Company, Charles Lewis and Shepherd Cab Owners' Association.
Although plaintiff in his supplemental petition did not state that he desired to make his original petition a part of his supplemental petition, and did not reiterate in the second petition all of the allegations of the first, he did ask that the two new defendants be cited and that they be served with copies of both the original and the supplemental and amended petitions.
We do not find that Lewis made any appearance by answer or otherwise. But Shepherd Cab Owners' Association filed answer in which, for lack of information, it denied all of the allegations as to the facts of the accident, and in which it especially and expressly denied that the said Association "were insurers or guarantors of the said cab of Charles Lewis on the date of the alleged accident."
When the case was called for trial, counsel for Shepherd Cab Owners' Association filed exceptions of no cause or right of action and stated that these exceptions were based on the contention that the supplemental petition making Lewis and the Shepherd Cab Owners' Association parties defendant came too late, and, on the further contention that since the allegations of the original petition were not reiterated nor expressly made part of the supplemental petition, there was nothing in the petition which charged negligence against Lewis or the operator of his cab, and that therefore there was nothing which showed liability in Shepherd Cab Owners' Association.
These exceptions were referred to the merits and after a trial there was solidary judgment as prayed for for $250.35 against T. S.C. Motor Freight Lines, Inc., Insurors Indemnity and Insurance Company, Charles Lewis and Shepherd Cab Owners' Association.
T. S.C. Motor Freight Lines, Inc., Insurors Indemnity and Insurance Company and Shepherd Cab Owners' Association have appealed.
When the matter was heard before us, counsel for the Shepherd Cab Owners' Association devoted himself very largely to his argument of the contention that the amended and supplemental petition making Lewis and the Shepherd Cab Owners' Association parties defendant came too late. He asserted that by this amendment plaintiff sought to "alter the substance of his demand" and that therefore the amendment came too late since, as counsel states it, "issue had been joined" by the filing of answer by T. S.C. Motor Freight Lines, Inc. and Insurors Indemnity and Insurance Company and by the taking of a judgment by default against V-8 Cab Company, Inc. He relied upon Articles 357 and 419 of our Code of Practice. These articles read as follows:
"357. Cause at issue, when. — The cause is at issue when the defendant has answered, either by confessing or denying the facts set forth in the petition, or by pleading such dilatory or peremptory exceptions as he is bound to plead in limine litis, pursuant to the provisions of this Code.
* * * * *
"419. Petition — Amendment after issue joined. — After issue joined, the plaintiff may, with the leave of the court, amend his original petition; provided the amendment does not alter the substance of his demand by making it different from the one originally brought."
[1] Conceding, but only for the moment, that this contention may be raised by such exceptions as were filed here, and conceding also for the moment that the exceptions were not themselves filed too late in that full and complete answer had already been filed, we shall consider whether the contention that the amendment should not have been permitted is well founded. We do not see that the substance *Page 483 
of the demand was changed by the addition of the proper parties defendant. The demand remained exactly what it was in the original petition, the only change made being that the plaintiff now shows that by the confusing corporate set-up of V-8 Cab Company, and its relationship with those who operate under its trade name, he was misled into believing that that corporation owned the cab which caused the damage whereas now, having discovered his error, he desires, by supplemental petition, to correct his error and to substitute as defendants the true owner of the cab and its liability insurance carrier.
There were other defendants against whom a solidary judgment was sought and it would be requiring plaintiff to undergo entirely unnecessary expense and delay to force him to dismiss the suit entirely and to then commence the action all over again. Our views on this question do not seem to be consistent with those expressed in Elfer v. Mintz, et al., La. App.,7 So.2d 416. But we find ourselves unable to agree with what was there said and with the conclusion there reached. On the contrary, we find that our present views are in accord with those expressed in the concurring opinion in Diamond T. Motor Trucks, Inc. v. Heck, La. App., 13 So.2d 512. In holding that plaintiff was within his rights in filing the supplemental petition, and in making Lewis and his insurance carrier parties defendant we adopt the reasons set forth in that concurring opinion. It is thus unnecessary that we consider whether the exceptions came too late or whether they, in fact, presented the issue which counsel says they presented.
[2] Counsel for Shepherd Cab Owners' Association says that there are no allegations of negligence against the operator of the cab since the only allegations of negligence appear in the original petition in which a cab of the V-8 Cab Company is alleged to have been the offending vehicle. He says that since in the supplemental petition it is now said that the offending cab belonged to Lewis, as the allegations of the original petition are not reiterated, there are no charges of negligence against the operator of the Lewis cab. We hesitate to dignify this contention by discussing it. It cannot be misunderstood that in the supplemental petition plaintiff merely said that all he had said originally about the V-8 Cab he meant to say about the Lewis cab. When he alleged his error as to the identity of the owner of the cab and then served the two new defendants with copies of the original petition as well as with copies of the supplemental petition, we think that he did all that was necessary.
[3] We pass on to the next contention which is that the Shepherd Cab Owners' Association was not the liability carrier of the taxi-cab at the time of the accident. It is argued that the taxi-cab was not identified as the Lewis cab or as a cab which at any time was protected by liability coverage of the Shepherd Cab Owners' Association. The identity of the cab was completely established. It was shown that it belonged to Lewis and that at least until a few days before the accident, it was protected by a bond, a policy or a cash deposit of that association.
But counsel says that that coverage had been cancelled before the occurrence of the accident and that therefore the Shepherd Cab Owners' Association was not the insurance carrier of that cab when the accident occurred. The following City Ordinances are called to our attention in connection with the requirement that taxi-cabs must furnish to the City authorities insurance protection either by a liability policy, bond or deposit of cash. These ordinances are Nos. 13,825 — 15,217 — 15,958 — 15,536 and 15,957.
Before a taxi-cab may be operated on the streets of New Orleans it must post with the proper authorities a policy, a bond or a cash deposit to guarantee that any tort liability will be met. We find too that there are several associations which undertake to furnish this protection and that Shepherd Cab Owners' Association is one of them. We find also that at least prior to and including August 1st, 1943, this particular cab of Lewis, bearing license No. 501218, was covered by a cash deposit made by Shepherd Cab Owners' Association.
Under date of August 1st, 1943, which was a Sunday, a letter was written by Mr. J.J. Jackson, representing Shepherd Cab Owners' Association, to the Commissioner of Public Safety and to the Commissioner of Public Utilities of the City of New Orleans. In this letter notice was given of the cancellation of the coverage of this particular cab and one other. The letter stated: "The above named and described vehicles have been cancelled out as members *Page 484 
of this association as of today * * *."
It is shown that this letter was received by the Commissioner of Public Safety on August 3rd, 1943. The accident occurred on August 13th, 1943, at about 5:15 P.M.
Paragraph 5 of Section 3 of Ordinance No. 13825, C.C.S., reads as follows:
"The policy of insurance or bond required to be deposited or filed with the Commissioner of Public Safety as is hereinabove provided, shall contain a clause obligating the company issuing the same to give not less than thirty (30) days' written notice to the Commissioner of Public Safety of the City of New Orleans before cancellation thereof. Notice of cancellation shall not relieve the company issuing such policy or bond, as the case may be, of liability for any injury or claim arising before the cancellation becomes effective."
The thirty-day written notice, as required in the ordinance as originally adopted was changed to ten days by subsequent amendment.
Counsel for the Shepherd Association maintains that this provision does not apply in this case because he says here there was a substitution of a new taxi-cab for the one on which the coverage was cancelled by his letter of August 1st, and that where there is such a substitution the change takes place five days after notice is given, and that therefore the coverage on the Lewis cab, which is involved in this case, was terminated five days after the sending of his letter. This other provision is contained in Section 7 of the Ordinance and reads as follows: "* * * provided, however, that the owner of any vehicle for which a permit of Public Necessity and Convenience has been issued may, at any time, upon giving five days written notice to the Commissioner of Public Utilities, withdraw the same from service and replace such vehicle by another vehicle owned by him and safe for the carriage of passengers."
We notice that here there was no notice of transfer given by the owner. Such notice as was given was given by the insurers, and we do not think that even if it had been given by the owners it would have affected the termination of the insurance on the first cab until after the expiration of ten days. The transfer provision was inserted for the convenience of an owner who, for some reason, may find it necessary to withdraw a cab from service. It merely permits him to substitute another cab on five days notice, but no where in that section or in any other is there anything to indicate that the insurance protection which applied to the original cab is cancelled, except at the expiration of the ten-day notice which is provided for by the first above-quoted paragraph. The purpose of the provision requiring a ten-day cancellation is to afford to the City authorities time in which to notify the police officers of the city so that it may be made certain that the cab, which is cancelled, is not allowed to operate.
[4, 5] But, says counsel for the Shepherd Cab Owners' Association, even if it is necessary to give ten days' notice of cancellation, that notice was given since the letter written by him was dated August 1st, whereas the accident did not occur until August 13th. Counsel points to many authorities concerning the use of the mails in completing a contract or in giving notice, and he says that where it is expected that something such as an answer will be transmitted by mail, the postal authorities become the agent of the addressee and he argues that therefore, when he deposited this letter in the mails, the ten days provided for commenced to run. Counsel for plaintiff, on the other hand, contends that, as a matter of fact, the cancellation did not become effective until November 2nd, several months later because that was the day on which the City Council acted and officially acknowledged that the cancellation had been effected. We cannot agree with counsel for plaintiff that the cancellation does not become effective until the City Council has acted upon the notice because this would put it within the power of the City Council to delay indefinitely the acceptance of the notice of cancellation. On the other hand, we cannot agree with counsel for Shepherd Cab Owners' Association that the ten days provided for in the ordinance commenced to run when he mailed his letter on August 1st. We think that that period commenced to run when the letter was received on August 3rd.
[6] How then should this ten-day period be computed? Article 2059 of the Civil Code provides that: "Notice required —Computation of time. — Where the obligation is not to do a thing without a notice of a certain number of days, or until after *Page 485 
so many days, neither the day of the contract nor the day of its performance are calculated."
The obligation here was "not" to cancel the insurance coverage on this cab without notice of ten days. The day on which the notice became effective, August 3rd, cannot be counted. The first of the ten days was August 4th and the last, August 13th. Thus the insurance protection remained in effect until after the accident.
[7] Counsel for this defendant makes the further contention that as a matter of fact the ten-day cancellation provision has no application here at all because here there was neither a bond nor an insurance policy but a deposit of cash. It is true that the quoted provision of the ordinance concerning the ten-day cancellation does not make reference to the case in which the insurer has deposited cash instead of a bond or policy. However, the entire ordinance seems to contemplate that either bond or insurance policy will be deposited, and it merely goes on to provide that, in lieu of either, cash may be substituted. It is our opinion that all of the provisions of the ordinance with reference to an insurance policy or a bond are intended to apply with equal force where cash is deposited instead.
[8] The next contention of this defendant is that there can be no recovery by plaintiff for the reason that he had parked his Buick sedan in violation of the General City Traffic Ordinance, No. 13,702, in that he had left it with its left side against the curb. In other words, that he had parked it on the left side of the street instead of on the right side as the Ordinance requires. This fact cannot possibly be said to have had causal connection with the accident. If it had been parked facing in the other direction, the only difference would have been that its rear end would have been damaged instead of its front end.
[9] When we come to consider the facts of the accident in an effort to determine where responsibility should be placed, we find that strangely enough neither of the drivers of the cars involved was produced as a witness and the only testimony as to how the accident occurred is given by Joseph Gagliano, who lived on LaSalle Street near the corner at which the accident occurred. He saw both vehicles just before they collided. He says that the taxi-cab was speeding up LaSalle Street at "between 40 and 50" and that it entered the intersection, without stopping or slowing up, at that excessive speed. He testified that there was a stop sign on LaSalle Street which faced the driver of the taxi-cab. This sign had been erected by the police department under authority of the General Traffic Ordinances of the City of New Orleans. There is no room whatever for doubt as to the negligence of the driver of the taxi-cab.
[10] The fault of the other driver is not so apparent for while his vehicle entered the intersection a little after the taxicab, it cannot be said that the intersection had been pre-empted by the taxi-cab because the latter had gotten into it first only because of its excessive speed.
Still, the fact that the taxi-cab was going at such a speed would certainly have been apparent to the driver of the truck had he been on the alert. Surely had he been careful he would not have driven his truck into the intersection when the taxi-cab, running at a speed of 40 or 50 miles an hour, was only a few feet away.
The corner is what is known as a "blind" one. Gagliano testified that there was a building on that corner up to the property lines on both streets.
Traffic Ordinance No. 13,702 in Article V, paragraph b of Section 3, provides that the speed limit at blind corners is 15 miles per hour and that a blind corner is one at which the driver of a vehicle "* * * does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the streets entering such intersection for a distance of one hundred feet from such intersection."
Gagliano testified that the speed of the truck was 15 miles an hour as it entered the intersection and, if that was its speed, then that was the maximum which under the ordinance would have been permitted. But even if its speed was not in excess of 15 miles per hour, obviously it was too great to permit the driver to stop, or if it was not too great, then his failure to stop was due to his inattention.
Counsel attempts to explain the fact this driver was not produced as a witness by showing that subpoenas had been left for him and that he had not responded because of his absence from the city. Possibly, under such circumstances, the fact *Page 486 
that he was absent does not create the usual presumption that otherwise would attach to the failure to produce an important witness who is under the control of the party who should produce him.
But even if we should conclude that no such presumption arises in this case, surely we cannot adopt the opposite presumption and conclude that the testimony of this driver would have been favorable. If we overlook altogether the fact that he was not produced, we have then only the evidence which shows that this truck entered the intersection, which was a blind one, at 15 miles per hour and that its driver permitted it to crash into the side of another vehicle which was crossing ahead of it.
We think that the negligence of this driver was as much responsible for the accident as was the negligence of the driver of the taxi-cab. The judge of the court a qua was of this opinion. He was correct.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.
WESTERFIELD, J., absent, takes no part. *Page 564